UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 1:20-cr-085-15 |
| v. | : | Judge Hopkins |
| ASHLEY LONG | ; | <u>SENTENCING MEMORANDUM</u> |

For the reasons set forth below, the Defendant, Ashley Long, through her undersigned attorney, Patrick J. Hanley, respectfully urges the Court to impose a sentence of supervised release.

MEMORANDUM

<u>Offense of Conviction</u>

On May 30, 2023, at a Change of Plea Hearing, Ms. Long, pursuant to a Plea Agreement, entered a guilty plea to one count of Conspiracy to Possess a Firearm in Furtherance of a Drug Trafficking Offense, a violation of 18 U.S.C. Section 924(o). That offense carries a maximum penalty of 20 years imprisonment, up to 3 years of supervised release, and a fine of not more than $250,000.00.

<u>Plea Agreement</u>

In a Statement of Facts attached to the Plea Agreement, Ms. Long admitted that from on or about April 1, 2020 through December 3, 2020, she agreed to purchase firearms for the HASKAMP drug trafficking organization and subsequently acted as a straw purchaser to purchase guns for Mason Meyer, who she knew was a convicted felon. She admitted she purchased 6 firearms for Meyer, one of which she knew Meyer was going to sell to a convicted

felon. She also admitted that she aided and abetted others in the conspiracy to purchase at least 3 additional firearms for Meyer.

Presentence Investigation Report

The Defendant has no objections to the factual representations in the Presentence Investigation Report (PSI). With respect to the Offense Level Computation, the Probation Officer made the following computation:

Offense Level Computation-

| | |
|---|---:|
| For a violation of 18 U.S.C. Section 924(o), U.S.S.G. Section 2K2.1(a)(7) provides a Base Offense Level of 12. (PSI, para. 82). | 12 |
| Because the offense involved more than 8 firearms but less 24, a 4-level enhancement is applicable pursuant to U.S.S.G. Section 2K2.1(b)(1)(B). (PSI, para 83-84). | +4 |
| U.S.S.G. Section 2K2.1(b)(5) imposes a 4-level increase in the Base Offense Level if a defendant was trafficking in firearms. Despite receiving nothing of value from her activity with Mr. Meyer, she is considered to be trafficking in firearms because she was aware that one of the individuals who Meyer was selling to was prohibited from possessing a firearm. (PSI, para. 85-86). | + 4 |
| U.S.S.G. Section 2k2.1(b)(6)(B) an increase of 4 levels because Ms. Long transferred a firearm to Mr. Meyer knowing he was trafficking In drugs. (PIR, para. 87-89). | +<u>4</u> |
| Adjusted Offense Level | 24 |

Criminal History Category:

| | |
|---|---:|
| Pursuant to U.S.S.G. Section 3E1.1(a) Ms. Long received a 2-level decrease because she clearly demonstrated acceptance of responsibility. (PSI, para. 95). | -2 |
| Pursuant to U.S.S.G. Section 3E1.1(b) she received a decrease of 1 level For timely notifying authorities of her intention to plead guilty. | |

  (PSI, para. 96).                    <u>-1</u>

          Total Offense Level (PSI, para. 97)     21

 Criminal History Category

  The Probation Officer concluded Ms. Long had a Criminal History Category of 1 based on the fact she had a misdemeanor Assault in 2021. (PSI, para. 105).

Based on a Total Offense Level of 21 and a Criminal History Category of 1, she faces a guideline imprisonment range of 37 to 46 months. (PSI, para. 142).

<u>Factors to be Considered in Imposing Sentence</u>

 18 U.S.C. Section 3553(a) sets forth the factors a sentencing court shall consider when imposing sentencing. The overarching provision provides that-

The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of this subsection.

In determining the particular sentence to be imposed, the court shall consider-

  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed-

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Who is Ashley Long?

  Ashel Long is 31 years old. She was born on October 22, 1992 in Ft. Thomas, Kentucky to James Maxey and Rhonda Long. They never married. Ashley knew her father in passing, he was a raging alcoholic and is to this day. Until she was 15 or 16, when she went out on her own, she was forced to move around a lot because her mother was drug addicted and suffered from depression and was bipolar. She lived with her grandfather, a friend of her mother, an aunt, and a second aunt and uncle. Her aunt, Diane Maxey took good care of her for a year until her mother came back on the scene and took her for a short period. Then her aunt and uncle, Alisha Wilkening and Jeremy Bow took good care of her for the next 3-4 years. She then turned 15 and got pregnant by Bradley Grote, an individual she never lived with, who is now deceased. They never married.

 Prior to her having her first child, she moved in with David Marsh and his parents in 2008-2009. She had her first child and named her Brooklyn Marsh, in April 2009. She named her after Marsh even though he was not the biological father. As she got older, Brooklyn and her mother argued all the time. The situation deteriorated to the point that Brooklyn eventually moved in with her aunt in London, Kentucky where she is in school. She stays with Ms. Long during the summers and on holidays.

 In August 2010, she and Marsh had her second child, Aubrey Marsh. In 2012, she had her third child named Ambrielle Marsh. Subsequently, in about 2018, she and Marsh broke and then she

and the children lived with Marsh's parents for about a year. Then, the children moved in with Marsh and his girlfriend. Then in 2020 Ashley decided to move from where she was, and the children lived and she got her own apartment in Independence, Kentucky

She dropped out of school when she was in the ninth grade at 15-16. She has worked full time ever since doing everything she could to obtain childcare. She has worked at McDonalds, Skyline, Gold Star, Courtyard Marriott cleaning rooms, Popeye's, Subway, United Household Rental renting furniture, Taco Bell, and then where she is at now One Stop Liquor and Tabacco.

She has known Mason Meyer since she was 13 when they were involved in a romantic relationship. In 2019, after her relationship with Mr. Marsh ended, he contacted her on Facebook and then they renewed the relationship for approximately one to one and a-half years. During that time, she lived with Meyer, her children stayed with Marsh and his girlfriend. That was the only time she did not live with her children. At the start of this period, Meyer was working and he and Ms. Long had a good relationship. However, she quickly learned he was using and distributing methamphetamine. He also became physically abusive towards her. Then, in the spring of 2020, he asked he asked her to buy firearms for him. She knew it was wrong but, because of his physical abuse, she did it and that led to the charges in this case.

Argument for a Sentence of Supervised Release

Undersigned counsel respectfully asks the Court to impose a sentence of supervised release. First, it should be understood that this case represents Ms. Long's first felony conviction. She has never done drugs. She is also the mother of three children that she has cared for during their lives except for the year when she lived with Meyer. In addition, Brooklyn has lived with

her aunt in London, Kentucky for the past one year and a-half and spends the summers with her mother. She has always provided for her children by working full-time.

To understand what caused her to engage in the conduct for which she is charged with in this case, one only has to consider how she was raised. Her mother and father provided no meaningful parental responsibility. For the most part, she was raised by different relatives and others individuals. The only caring people involved in her upbringing were her aunt, Dianne Maxie, her other aunt, Alisha Wilkening, and her uncle, Jeremy Bow, who cared for her until she got pregnant. After that she got involve with Marsh and Meyer who both physically abused her. Yet, despite everything she has maintained employment, taken care of her children, and stayed out of trouble until Meyer pressured her to purchase the firearms in question.

With respect to the nature and circumstances of the offense and the history and characteristics of the defendant, it must be conceded that buying firearms for others prohibited from owing such firearms is a serious offense. However, when the underlying facts are considered along with the history and characteristics of the defendant, incarceration is not appropriate. First of all, the only reason Defendant was involved at all was because she was told to buy the firearms by Meyer who physically abused her when she objected. She was never involved in such activity before or after Meyer. She eventually left Meyer but it was a difficult thing to do.

Moreover, a sentence that does not include incarceration is also warranted when Ms. Long's history and characteristics, are considered. As previously noted above, she has had a difficult upbring with no parental guidance. Despite that, she has never taken drugs and has avoided any legal trouble until this case. He has always been employed and personally taken care of her

responsibilities. She has three children, Brooklyn who is 14 years old, Aubrey who is 13, and Ambrielle who is 10 that she alone is responsible for. When one considers this history and background, one must conclude that the offense of conviction is due in large part to Meyer and his physical abuse of Ms. Long. She did not benefit from the purchase of the firearms in any way and only agreed to do so because of the impact of the physical abuse Meyer inflicted on her. She has no criminal record to speak of before the instant event and has custody of her three girls.

  When one considers the other factors set forth on Section 3553(a) supervised release is the most reasonable sentence. Such a sentence would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. It would also afford adequate deterrence to criminal conduct. Finally, it would protect the public from further crimes of the defendant.

  The fact that Ms. Long was charged, has pleaded guilty to the offense, and will be sentenced to a term of supervised release meets all of the factors of Section 3553(a). A review of her record indicates that she is unlikely to repeat her conduct in this case. In view of her background, it is remarkable that Ms. Long has never been in trouble with the law until this case. She has never been given a chance at a meaningful life. If the Court sees fit to impose a sentence of supervised release rather than incarceration, hopefully, that will be the chance that her and her children need to live a normal and productive life.

  Moreover, significantly, Ms. Long has cooperated with the Government from the beginning of this process.

When the above facts are considered, it is respectfully submitted that a sentence of supervised relief is sufficient, but not greater than necessary, to comply with the purposes set forth in Section 3553(a)(2).

Respectfully submitted,

/s/   Patrick J. Hanley
Patrick J. Hanley

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this Sentencing Memorandum was filed with this Court on February 9, 2024, thus resulting in service on counsel for all parties involved in this case.

/s/  Patrick J. Hanley
Patrick J. Hanley